UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Joshua Dilley,

    Plaintiff,

    v.                                                Civil Action No. 2:11-CV-80

Commissioner of Social Security,

    Defendant.

## REPORT AND RECOMMENDATION
(Docs. 7, 15)

    This is a social security disability benefits case brought by Plaintiff Joshua Dilley against the Commissioner of Social Security ("Commissioner") under 42 U.S.C. § 405(g). Dilley has filed a motion seeking to remand the matter to the Commissioner for consideration of additional evidence pursuant to sentence six of 42 U.S.C. § 405(g). (Docs. 7, 15.) The Commissioner opposes the motion. (Doc. 18.)

### Background Facts

    On November 23, 2010, Administrative Law Judge ("ALJ") Paul Martin issued a decision finding that, although Dilley had the severe impairments of major depression, obsessive-compulsive disorder, and post-traumatic stress disorder ("PTSD"), he was not disabled during the period from January 1, 2007, the alleged disability onset date, through March 31, 2010, the date last insured. (Doc. 10 at 3, 8-9.) Approximately forty-five days after the ALJ's decision was issued, Dilley was hospitalized at the Brattleboro Retreat, a

mental health and addictions treatment center, from January 8 until January 21, 2011. (Doc. 7-1 at 1-25.) Records of this hospitalization constitute the "additional evidence" on which Dilley's sentence six motion to remand is founded. (Doc. 15 at 2.) Among other things, the records include diagnoses from medical providers at the Brattleboro Retreat of Bipolar Disorder Type 2 and PTSD. (Doc. 7-1 at 25.) The records also include observations by medical providers that Dilley had a "[v]ery flat affect" (*id.* at 5), was "very socially phobic" (*id.* at 7), and was "isolating in his room" (*id.* at 8) during his hospitalization; and had been "consistently depressed" and experienced "ongoing suicidal ideation," including contemplating shooting himself, prior to such hospitalization (*id.* at 22). The ALJ was not able to consider this evidence in making his decision, as Dilley's January 2011 hospitalization did not occur until after the ALJ's decision was made.

## Analysis

Pursuant to 42 U.S.C. § 405(g), "[t]he court may . . . at any time order additional evidence to be taken before the Commissioner . . ., but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." In applying this provision, the Second Circuit has developed a three-part test, allowing supplementation of the record where evidence is:

> (1) 'new' and not merely cumulative of what is already in the record . . .[;
> and] (2) material, that is, both relevant to the claimant's condition during
> the time period for which benefits were denied and probative . . .[; and (3)
> where there is] good cause for [the claimant's] failure to present the
> evidence earlier."

*Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991) (internal citations omitted).

In this case, the Commissioner concedes that Dilley's additional evidence is "new" (Doc. 18 at 2 n.1), and thus the Court need not address the first element. With respect to the third element, the Commissioner explicitly does not analyze whether there is "good cause" for Dilley's failure to present the new evidence earlier. (*Id.*) I find that good cause does exist, given that Dilley's bipolar diagnosis was not made until his January 2011 hospitalization, and thus Dilley could not have obtained the evidence prior to issuance of the ALJ's November 2010 decision. The Second Circuit has held that "'[g]ood cause' for failing to present evidence in a prior proceeding exists where . . . the evidence surfaces after the [Commissioner's] final decision and the claimant could not have obtained the evidence during the pendency of that proceeding." *Lisa*, 940 F.2d at 44; *see Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir. 1985) (finding "good cause" where claimant's diagnosis was based on neurological evaluation and laboratory data acquired after administrative hearing, and where medical provider's assessment of claimant's response to medication necessarily had to await a period of observation). The parties' primary dispute concerns the remaining element, whether Dilley's new evidence is "material."

The Second Circuit has explained that "[t]he concept of materiality requires . . . a reasonable possibility that the new evidence would have influenced the Secretary to decide [the] claimant's application differently." *Lisa*, 940 F.2d at 43. Moreover, "'[a]n implicit materiality requirement is that the new evidence relate to the time period for

which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.'" *Tirado v. Bowen*, 705 F. Supp. 179, 182 (S.D.N.Y. 1989) (quoting *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)); *see Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). Disputes concerning the relevancy of diagnoses made after a denial of benefits (like Dilley's bipolar diagnosis here) "are driven by the tension between the need for finality and the search for truth," and "[w]here there is uncertainty, courts tend to lean towards granting the remand." *Tirado*, 705 F. Supp. at 181, 183. The Second Circuit explained:

> We recognize, of course, that claimants ordinarily should have but one opportunity to prove entitlement to benefits, otherwise disability administrative proceedings would be an unending merry-go-round with no finality to administrative and judicial determinations. It is a truism nonetheless, that nothing is permanent except change, and for that reason *room must be allowed in the process for the fact that a claimant's medical condition may not be fully diagnosed or comprehended at the time of her hearing*.

*Tirado v. Bowen*, 842 F.2d 595, 596 (2d Cir. 1988) (emphasis added).

The Commissioner argues that Dilley's motion should be denied because the new evidence "reflects symptoms and diagnoses from a period of time after the current claim, and has no retrospective applicability." (Doc. 18 at 1-2.) The Commissioner concedes that the new evidence might reasonably have affected the ALJ's decision, stating that "the treatment notes suggest an apparent deterioration in Dilley's condition, and thus suggest more serious impairments and limitations than the ALJ noted"; but contends that the evidence demonstrates that the deterioration of Dilley's condition resulted from

4

"changed circumstances," specifically Dilley's breakup with his girlfriend, which occurred after the ALJ's decision. (*Id.* at 2.) In response, Dilley asserts that his bipolar disorder "is not a condition that somehow sprang into being after the ALJ's decision," but rather, "is a condition which was suspected all along but . . . needed the additional opportunities for assessment offered by . . . Dilley's hospitalization at the Brattleboro Retreat where it was specifically diagnosed." (Doc. 20-1 at 2.)

In *Roat v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010), the court analyzed new evidence similar to that presented here, and determined that it satisfied the elements outlined in 42 U.S.C. § 405(g) and should be considered on remand. Citing to other relevant cases, the court explained:

> "[A] diagnosis of a claimant's condition may properly be made even several years after the actual onset of the impairment." *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981) (internal quotation marks and citations omitted). "Because of its complexity, bipolar disease can be difficult to diagnose; between seven and ten years of misdiagnoses and incorrect treatment is typical for bipolar patients." *In re Zyprexa Prods. Liability Lit'n*, 253 F.R.D. 69, 98 (E.D.N.Y. 2008). *Remand based on new evidence, specifically a new diagnosis of bipolar disorder following a hospitalization a year after the hearing concluded, [is] deemed appropriate. Brehm v. Astrue*, No. 09-CV-263T-30TGW, 2009 WL 4041826, at *2 (M.D. Fla. Nov. 20, 2009).

*Roat*, 717 F. Supp. 2d at 260 (emphasis added). This reasoning applies here as well. Even though Dilley's bipolar diagnosis was not made until after the ALJ's decision, there is a reasonable possibility that the diagnosis would have influenced the ALJ to decide Dilley's claim differently. This is especially true, considering that the ALJ noted in his decision that Dr. Senior had opined that Dilley had "markedly impaired functioning in multiple areas," but discounted that opinion on the basis that "the record contains . . . no

5

reports from [Dilley's] health care providers that are consistent with such significant limitations." (Doc. 10 at 7.)  The January 2011 hospitalization notes and bipolar diagnosis documented in Dilley's new evidence, which were recorded only approximately two months after the ALJ's decision, indicate significant limitations which may have existed during the alleged disability period.  Although the new evidence does not explicitly connect Dilley's bipolar diagnosis to the alleged disability period, it does at least include references to earlier periods.  For example, psychiatric progress notes refer to a "manic episode [occurring] 3 weeks ago" (AR 7-1 at 7), and state that Dilley's "situation [was] complicated by past h[istory]" (*id.* at 8).

  The new evidence also includes Dilley's Discharge Summary, dated January 21, 2011, from the Brattleboro Retreat, which mentions Dilley's treatment in "the DHMC inpatient unit in October [2010] status post Wellbutrin overdose." (Doc. 7-1 at 22.)  This inpatient treatment occurred prior to the ALJ's decision, and the ALJ discussed it therein, deeming it an "episode of decompensation" and stating that Dilley "was treated at Springfield Hospital in October 2010 for an overdose of prescribed medication." (Doc. 10 at 5; *see also id.* at 7.)  It is reasonable that the ALJ might have decided the claim differently had he known of the subsequent January 2011 hospitalization documented in Dilley's new evidence.  As the Second Circuit has repeatedly observed,

> [E]vidence bearing upon an applicant's condition subsequent to the date [last insured] is pertinent evidence in that it may disclose the severity and continuity of impairments existing before th[at date] or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the . . . date [last insured].

6

*Lisa*, 940 F.2d at 44 (quotation marks omitted).  More particularly, the Second Circuit has determined that when, as here, a diagnosis emerges after the close of administrative proceedings that "sheds considerable new light on the seriousness of [a claimant's] condition," evidence of that diagnosis is material and justifies remand.  *Id.*

There is little merit to the Commissioner's claim that the new evidence is irrelevant to Dilley's present claim because it reflects Dilley's reaction to the "changed circumstance" of his breakup with his girlfriend, which occurred after the ALJ's decision.  First, as the ALJ noted in his opinion (and as discussed above), Dilley had another hospitalization in October 2010 and there is no indication that the cause of that hospitalization was a breakup with his girlfriend; rather, the ALJ's opinion states that the October 2010 hospitalization was due to "an overdose of prescribed medication."  (Doc. 10 at 5.)  Second, the "Discharge Summary" included in the new evidence submitted by Dilley states that, during his January 2011 hospitalization, Dilley had "patched up" his relationship with his girlfriend, but he then "began to endorse homicidal ideation and a feeling that he was not sure that he could be safe from acting on these thoughts" when he discovered that his neighbor was "harassing" his girlfriend.  (Doc. 7-1 at 24.)  Becoming suicidal over the breakup of a relationship and endorsing homicidal ideation when hearing about the harassment of a loved one are generally not reactions that a mentally-stable individual would exhibit.  It is at least plausible that these reactions were manifestations of Dilley's underlying mental disorder.

7

## Conclusion

For these reasons, I find that the new evidence, which includes a diagnosis of bipolar disorder following a two-week hospitalization which occurred within two months of the ALJ's decision, casts new light on the severity of Dilley's mental impairments during the alleged disability period, and thus would present a reasonable possibility of influencing the Commissioner to decide Dilley's claim differently. The evidence suggests that Dilley's mental impairments were more severe than previously diagnosed, and bolsters the credibility of Dilley's subjective complaints. Therefore, I find that the new evidence warrants remand for consideration by the Commissioner, and I recommend that the Court GRANT Dilley's motion to remand (Doc. 7), and REMAND this matter to the Commissioner under sentence six of 42 U.S.C. § 405(g) for consideration of Dilley's new evidence.

Dated at Burlington, in the District of Vermont, this 1st day of September, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.  *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).